FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEPHANIE SEAGRAVES;
BELINDA BRONS; BENJAMIN
LUPO; CHARLENE RAMIREZ;
JAMES WILSON; KRISTIN
ROWLAND; LAURA COOK;
MARY AHERN; MICHELLE
WHITLOW; MELINDA
ALEXANDER; PAULENE
DOUGHTERY; SANDRA RUCH;
SPENCER MOOERS; TAYLOR
SCHRODT; THERESA
BEYERSDORFER BOGUE; TONY
LACEY; TRACIE DUMAS;
YVETTE HESSLER,

        *Plaintiffs - Appellants*,

  v.

WASHINGTON STATE
DEPARTMENT OF CHILDREN
YOUTH AND FAMILIES, a
governmental agency; ROSS
HUNTER; VICKIE YBARRA;
MARCOS RODRIGUEZ,

        *Defendants - Appellees*.

No. 25-3282

D.C. No.
3:24-cv-05081-
TMC

OPINION

Appeal from the United States District Court
for the Western District of Washington
Tiffany M. Cartwright, District Judge, Presiding

Argued and Submitted May 20, 2026
Seattle, Washington

Filed July 21, 2026

Before: Richard C. Tallman, Richard R. Clifton, and Ryan
D. Nelson, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### COVID-19 Vaccination Policy

The panel affirmed the district court's dismissal, for
failure to state a claim, of a 42 U.S.C. § 1983 action brought
by former employees (the "Employees") of the Washington
Department of Children, Youth, and Families ("DCYF" or
"the agency"), arising from the implementation of a COVID-
19 vaccination requirement mandated by then-Governor of
Washington, Jay Inslee.

The Employees allege that DCYF and three individuals
who held positions within the agency (the "Officials")
violated their constitutional rights and various provisions of

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

Washington state law through the implementation of the COVID-19 vaccination requirement when their requests for religious accommodations from the vaccine requirement were denied and they were separated from the agency.

The panel affirmed the district court's dismissal of the Employees' claims against the Officials in their personal capacities because the first amended complaint did not plausibly allege personal involvement by any of the Officials in constitutional violations of the Employees' free exercise, equal protection, or procedural due process rights.

The panel further held that the Employees' claims for prospective injunctive relief against the Officials in their official capacities are barred by the Eleventh Amendment because the Employees identified no ongoing violation of federal law where Governor Inslee's COVID-19 vaccination requirement was rescinded months before they filed their original complaint.

Lastly, the panel held that the district court acted within its discretion in denying the Employees leave to amend, based on its reasonable conclusion that amendment would have been futile.

## COUNSEL

Nathan J. Arnold (argued), Arnold Jacobowitz & Alvarado PLLC, Seattle, Washington; Lesley-Anne Alvarado, Arnold Jacobowitz & Alvarado PLLC, Redmond, Washington; Dennis J. McGlothin, Western Washington Law Group PLLC, Bellevue, Washington; for Plaintiffs-Appellants.

Zachary J. Pekelis (argued), Kai A. Smith, and Erica Coray, Special Assistant Attorneys General, Pacifica Law Group LLP, Seattle, Washington; Nicholas W. Brown, Washington Attorney General, Office of the Washington Attorney General, Seattle, Washington; for Defendants-Appellees.

## OPINION

CLIFTON, Circuit Judge:

This case arises from the Washington Department of Children, Youth, and Families' ("DCYF" or "the agency") implementation of a COVID-19 vaccination requirement mandated by then-Governor of Washington, Jay Inslee. Appellants are former DCYF employees (the "Employees") who were separated from the agency after their requests for religious accommodations from the vaccine requirement were denied. Appellees are DCYF and three individuals who held positions within the agency at the time: Secretary Ross Hunter; Human Resources Director Marcos Rodriguez; and Assistant Secretary of Partnership, Prevention, and Services Vickie Ybarra (together, the "Officials"). The Employees claim DCYF and the Officials violated their constitutional rights and various provisions of Washington

state law through the implementation of the Governor's vaccine mandate. The district court dismissed the case for failure to state a claim. We affirm.

## I.  Background

In response to escalating concerns over the COVID-19 pandemic, Governor Inslee issued a Proclamation in August 2021 (the "Proclamation") prohibiting "[a]ny Worker from engaging in work for a State Agency after October 18, 2021 if the Worker has not been fully vaccinated against COVID-19." This vaccine requirement was intended to slow the spread of COVID-19 and "preserve and maintain life [and] health." The Proclamation directed state agencies to evaluate employee requests for medical and religious exemptions and provide reasonable accommodations, consistent with state and federal anti-discrimination statutes. It specified that employees with sincerely held beliefs or disabilities that prevented them from being vaccinated were to be provided a reasonable accommodation, if doing so would not impose an "undue hardship" on the employer.

State agencies, including DCYF, were responsible for implementing the Proclamation's requirements within their workforce. Internal communications between the Officials in the weeks immediately following the Proclamation reveal some of the questions that arose within DCYF during the agency's rollout of the new policy. For instance, on August 16, 2021, Hunter was asked in a private text message about how DCYF would handle requests for religious exemptions. He responded that the policy was "[n]ot figured out yet" but that the agency would be "as strict as we are allowed to be."

A week later, Hunter sent an email to various DCYF staff, including Rodriguez and Ybarra, outlining a "multi-prong approach to vaccination." The agency's fundamental

message was that employees must "[g]et vaccinated or lose your job," which Hunter wanted "[c]ommunicated to unvaccinated people in ways that [are] helpful for them to hear." He wrote that "[i]t is unsafe for our staff to serve clients, particularly children and at-risk adults who have not been vaccinated if they are vastly more likely to spread the disease." Hunter identified potential objections that employees might raise to the vaccination requirement, including "[s]afety," "[p]olitical tribalism," and "[r]eligious objections, real or imagined," along with various resources that he believed might help address employees' concerns about vaccination. The list included "[a] North Dakota video from religious authorities (pope, etc.)." He concluded with the comment that "[o]nce we get a strong message out about the inability to hide behind the exemption strategy we will want to start helping people over their other concerns."

About two months later, Hunter sent another email where he contemplated how future developments might impact the DCYF's policy. He wrote that when a "[s]afe" vaccine became available, "some employees will be unable (medically) to take it. How will we approve this?"

Ultimately, the process DCYF implemented was bifurcated into two distinct stages: exemption and accommodation. First, employees seeking exemption from the vaccine mandate had to attest that they had "a sincerely held religious belief or religious conviction that prevents [them] from receiving the COVID-19 vaccine." Approved exemption requests would then be considered for reasonable accommodations. DCYF's policy was to "provide reasonable accommodations to qualified applicant[s] and employees . . . unless providing such accommodations would pose an undue hardship" to the agency. In assessing accommodation options, DCYF evaluated "the essential

functions, job classification, and working environment of [the employee's] position as well as business and workplace safety requirements." An accommodation could not be granted if doing so would "include eliminating essential functions of [an employee's] position." Statistics released in January 2022 show that out of 291 employee exemption requests, 279 were approved.[1] Of those 279 employees with approved exemptions, 216 sought accommodations at the second stage of the process; 105 of those requests were approved and 111 were denied.

The Employees had a wide range of roles within DCYF, ranging from juvenile rehabilitation residential counselor to adoption specialist. Each Employee sought a religious exemption and accommodation from DCYF's vaccination requirement.[2] All seventeen received an exemption. But at the second stage, DCYF determined that reassignment was "the only reasonable accommodation" available to these Employees. This determination was based on the conclusion that the Employees could not perform the essential functions of their positions unvaccinated without posing a threat to the health and safety of others in the workplace, including children and families, because their "position[s] serve[d] the community and require[d] unavoidable or unpredictable interaction with others."

The letters communicating DCYF's accommodation decisions to the Employees gave them five days to respond

---

[1] The cited figures exclude requests that were "closed" or "withdrawn."

[2] Neither the original nor amended version of the Employees' complaint identified what their religious beliefs are, or how the vaccine requirement conflicted with those beliefs. In their briefing on appeal the Employees clarify that their objections relate to their understanding that aborted fetal cells were used to develop and test the COVID-19 vaccines.

if they wished to be considered for reassignment to another role and explained that "[d]eclining this accommodation require[d] [them] to become fully vaccinated against COVID-19 or . . . be separated from employment on October 18, 2021." The Employees were also invited to contact human resources for questions and support.

The Employees allege that they requested alternative accommodations such as remote work, frequent COVID-19 testing, use of personal protective equipment, and social distancing to minimize their risk of catching or spreading COVID-19, but DCYF rejected the suggestions. The Employees also allege that they asked for pretermination hearings to discuss alternative accommodations, but that DCYF refused. All Employees were ultimately separated from the agency.

The Employees filed suit against DCYF and Secretary Hunter in the Western District of Washington on January 30, 2024. The complaint alleged violations of their rights under both the federal and Washington state constitutions, 42 U.S.C. § 1983, and various provisions of Washington state law. The district court dismissed all claims. Its order noted that the Employees' federal claims for injunctive relief against Hunter in his official capacity were deficient because the Employees did not allege an ongoing violation of federal law that an injunction could remedy. The Employees also failed "to adequately identify how Hunter personally participated in violating each [Employee's] rights for each cause of action," which vitiated their federal claims against him in his personal capacity. Believing that those deficiencies may be curable, the district court dismissed those claims (and all state law claims) without prejudice and with leave to amend.

On October 14, 2024, the Employees filed a first amended complaint ("FAC"), which named Rodriguez and Ybarra as additional defendants. The FAC included four federal constitutional claims against the Officials under Section 1983 for violations of: (i) free exercise; (ii) procedural due process (iii) equal protection, and (iv) the Contracts Clause. The FAC also asserted various state law claims against the Officials and DCYF. The Employees claimed that Hunter had "personally and integrally participated in concocting DCYF's exemption and accommodation policies that were intentionally designed to treat religiously exempt DCYF employees less favorably than their similarly situat[ed] secularly exempt counterparts." Rodriguez and Ybarra allegedly implemented the discriminatory policies. In support the Employees cited the internal communications between the Officials and statistics showing DCYF's approval rate for accommodations, both of which they claimed showed "religious animus."

The Officials moved to dismiss the FAC and the district court granted their motion. The district court concluded that the Employees' four federal claims all failed on the merits. They had failed to state a free exercise claim, because they had not plausibly alleged that the vaccination mandate was not neutral and generally applicable. The court rejected the Employees' First Amendment arguments for heightened scrutiny and found that Hunter's emails and text messages had not shown animus towards religion, but rather an intent for "DCYF to *follow* its statutory obligations on religious accommodations." Reasoning that the Employees' equal protection claim was "subsumed by, and co-extensive with, [their] First Amendment claim," the court dismissed it as well.

The district court likewise rejected the Employees' procedural and substantive due process claims. It held that DCYF's exemption and accommodation process provided as much notice and process as the law required, and that the right to refuse vaccines was not a fundamental right. The court determined that the Employees had abandoned their Contracts Clause claim based on lack of argument.

Finally, the district court concluded that the Employees had once again failed to plausibly allege the Officials' personal involvement in the claimed constitutional violations. The court further held that the Employees' official-capacity claims for reinstatement failed because they still had not plausibly alleged an ongoing constitutional violation, given that the Proclamation was no longer in effect by the time of their suit. The court did not reach the Officials' qualified immunity defense, and it declined to exercise supplemental jurisdiction over the Employees' state law claims. The case was dismissed without leave to amend. The Employees filed a motion for reconsideration, which the district court denied.

## II. Discussion

We review de novo the grant of a motion to dismiss and "may affirm on any ground supported by the record." *Saloojas, Inc. v. Aetna Health of Cal., Inc*., 80 F.4th 1011, 1014 (9th Cir. 2023). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While we must accept factual allegations as true, we need not credit conclusory assertions or unsupported inferences. *See id.* at 678–79.

To establish personal involvement under Section 1983, plaintiffs must show that the defendant "cause[d] [them] to be subjected to a constitutional deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Causation exists when the defendant either (1) "knows about and acquiesces in the constitutionally defective conduct as part of a common plan," or (2) "sets in motion a series of acts by others which the defendant knows or reasonably should know would cause others to inflict the constitutional injury." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (citation modified) (quoting *Johnson*, 588 F.2d at 743–44). Vicarious liability may not be imposed on a supervisor for the acts of their subordinates in a Section 1983 action. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013) (citation omitted); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[T]here is no respondeat superior under section 1983.").

The FAC does not plausibly allege personal involvement by any of the Officials in constitutional violations of the Employees' free exercise, equal protection, or procedural due process rights. All the Employees' requests for accommodations in their current roles were denied, based on determinations that they could not perform the essential functions of their positions unvaccinated without endangering the health and safety of others in the workplace, including children and families. Accordingly, their supposed constitutional injuries flow from this determination. Yet the FAC does not allege that any of the Officials personally participated in evaluating the Employees' accommodation requests or that they played a role in denying them pre-termination hearings.

The only non-conclusory factual allegations about the Officials' conduct relate to the internal communications

penned by Hunter, discussing how to implement the vaccine policy within the agency. As the district court correctly observed, the Employees fail to allege any involvement by Rodriguez and Ybarra aside from their passive receipt of Hunter's email of August 23, 2021. The Employees' only remaining theory is that Hunter set into motion an accommodation policy that he knew or reasonably should have known would cause a constitutional injury. *See Peck*, 51 F.4th at 889.

This theory tries to infer religious animus by juxtaposing Hunter's language in his August 16, 2021, text message and October 14, 2021, email. But simply taking the language he used in two communications sent two months apart out of context and comparing it does not make plausible that DCYF's accommodation policy was discriminatory or motivated by religious animus. Rather, these communications show that Hunter was concerned about DCYF complying with applicable law: the review of religious accommodation requests would be cabined by what the law allowed, and any approval of medical exemptions would be constrained by what DCYF was able to approve under the law.

The remaining factual allegations that the Employees provided in their pleadings undermine the plausibility of their "religious animus" theory. First consider Hunter's August 23, 2021, email discussing DCYF's communications plan for vaccination. The goal of this plan was to convince as many DCYF employees as possible to get vaccinated. Part of the plan involved addressing various potential objections to vaccination: medical safety, convenience, religious objections, and political tribalism. This plan did not single out religiously motivated objections for special treatment. Religious objections were included among

several secular objections, and the aim of the plan was to convince DCYF employees that their concerns about vaccination were unfounded, regardless of the religious or secular character of those concerns. That religious objections were one of several objections to address does not, without more, indicate hostility toward religion.

Next consider the exemption and accommodation statistics that the Employees provided. Nearly half of the 216 employees whose religious accommodation requests were processed to a final decision were accommodated, while just over half of the 22 employees whose medical accommodation requests were processed to a final decision were accommodated. Even viewed in the light most favorable to the Employees, these statistics do not make it plausible that DCYF's accommodation process was discriminatory toward those who objected to vaccination on religious grounds. Thus, the Employees have failed to allege sufficient facts to support their theory that Hunter established a policy that he knew or reasonably should have known would result in a constitutional violation.

In short, the Employees failed to allege that any of the Officials were personally involved in their individual accommodation decisions, or that Ybarra or Rodriguez were personally involved in creating the accommodation policy. As for Hunter, the Employees have failed to plausibly allege that he created or set into motion a policy that he knew or reasonably should have known would result in a constitutional violation. We therefore affirm the district court's dismissal of the Employees' claims against the Officials in their personal capacities.

This leaves the claims for prospective injunctive relief against the Officials in their official capacities. We conclude

that these claims are barred by the Eleventh Amendment because the Employees have identified no ongoing violation of federal law. Under the *Ex parte Young* exception to sovereign immunity, a plaintiff who has plausibly alleged an ongoing policy and threat of future enforcement may bring a Section 1983 claim against a state official in their official capacity for prospective injunctive relief. *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839, 841 (9th Cir. 1997) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Han v. U.S. Dep't. of Justice*, 45 F.3d 333, 338 (9th Cir. 1995). Prospective injunctive relief includes remedies such as job reinstatement. *See Doe*, 131 F.3d at 841. But the Proclamation was rescinded in October 2023, months before the Employees filed their original complaint on January 30, 2024. Because the Proclamation was no longer in effect, there was no ongoing constitutional violation and no threat of future enforcement.

Finally, we conclude that the district court acted within its discretion in denying the Employees leave to amend, based on its reasonable conclusion that amendment would have been futile. We review such denials for abuse of discretion. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020). A court may deny leave to amend when "the complaint could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) (quotation omitted). The Employees filed the FAC after the district court dismissed their complaint based on the same deficiencies we identify here. But rather than adding new factual allegations to cure these defects, the FAC largely repackaged the Employees' legal theories and added two defendants with a more tenuous connection to the alleged violations than Hunter. Considering the Employees' failure

to cure the identified defects, the district court acted within its discretion in holding that further amendment would not render the claims viable.

## III.  Conclusion

The Employees have not plausibly alleged facts sufficient to show that the Officials personally participated in the alleged constitutional violations. Accordingly, we affirm the district court's order dismissing all federal claims against the Officials and denying leave to amend.

**AFFIRMED.**